UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIVIAN HOLT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 09 C 4580 |
| v. | ) |
| | ) Judge George M. Marovich |
| ASSET ACCEPTANCE, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Asset Acceptance, LLC ("Asset Acceptance") has filed a motion to enforce the settlement agreement it claims to have reached with plaintiff Vivian Holt ("Holt"). For the reasons set forth below, the Court grants the motion and enforces the settlement agreement.

**I.     Background**

In July 2009, Plaintiff Holt filed against Asset Acceptance a complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). The Court granted Holt leave to proceed *in forma pauperis* and appointed her counsel. At a status hearing on December 22, 2009, counsel reported to the Court that the parties had reached a settlement agreement and that they would file a stipulation of dismissal.

At some point in January 2010, counsel for defendant sent counsel for plaintiff a proposed written settlement agreement. Counsel for plaintiff sent defense counsel an email, in which plaintiff's counsel stated:

> Attached is a mark-up copy of the Settlement Agreement. You will obviously see the edits, but I wanted to explain the need for the changes in Paragraph 3. Specifically, my client does not want to provide a general release of the assignor of the debt (I believe Target), nor does she want to release any person or party from future acts or claims. The release contains a release of any claim she now

has or ever had, so that should suffice. Paragraph 3(b) seems to be an enlarged re-
statement of paragraph 3(a), so we have deleted a portion of that section.

(1/29/10 email from W. Kent Carter to Nabil Foster). On February 2, 2010, defense counsel responded, "OK. Send me a final version for signature. I also need a completed W-9 form from your client. I attach a blank W-9 for your convenience." On February 3, 2010, plaintiff's counsel sent defense counsel an email that said, "Attached is a clean, final version of the Settlement Agreement. I will let you know when I have a signed copy of the Agreement and W9 from my client. Thank you." The written settlement agreement sets out, among other things, that: (1) Holt would dismiss this case with prejudice; (2) Asset Acceptance would issue Holt a check for $2,000.00; and (3) Holt would release Asset Acceptance for claims that were brought or could have been brought in this suit.

Months passed. On April 7, 2010, defense counsel sent plaintiff's counsel an email that said, among other things, "I need a copy of the signed settlement agreement before I can send you the settlement check." The plaintiff never signed the written agreement.

When the parties had not filed a stipulation of dismissal by April, the Court set a status hearing for May 11, 2010. The parties informed the Court that the plaintiff had refused to sign the written settlement agreement. Soon thereafter, defendant filed a motion to enforce the settlement agreement and noticed the motion for hearing June 1, 2010. The following are excerpts from that hearing.

>**The Court:** What's the problem with the plaintiff?
>
>**Plaintiff's counsel:** The settlement agreement, your Honor, was reached at a time and an amount, and during the course of the drafting, the negotiating of the language of that agreement and the terms of the release, my client noticed–a few different things happened, your Honor.

Number one, my client received a 1099 tax form for forgiveness of debt from the defendant related to two debts which she contended all along are fraudulent, so that upset her somewhat. The other issue is that she noticed on her credit report the accounts which she believed should have been corrected by the defendants in prior litigation a year prior to this and so there is–there was some unease, there is some unease about this, and so realizing that there is going to be a continuing struggle to not only repair her credit but also deal with the defendant, she has decided that the amount of money for which she was originally to settle for she is no longer willing to settle for.

**The Court:** Well, my problem is this. A change of heart does not feed the bulldog as far as an agreement is concerned. I mean, a settlement agreement, for lack of a better description, is a contract. You have had a meeting of the minds as far as a settlement is concerned and that is the end all and be all of it. I don't know–what is the amount that you're talking about here?

**Plaintiff's counsel:** If I may, your Honor, a settlement agreement was not signed in this case.

**The Court:** I understand that. That's not my question.

**Plaintiff's counsel:** One was prepared, one was revised. I understand.

**The Court:** My question was whether or not one was reached.

**Plaintiff's counsel:** Yeah, exactly. There was a settlement reached and the sum was $2,000 payable to the plaintiff. I am not seeking any fees. I'm appointed counsel in this matter, your Honor, so I was willing to waive my fees or whatever I might be seeking in order to get compensation for my client and so that amount had been agreed to, but in the two months that we were negotiating and revising the settlement and trying to agree to the settlement terms, my client realized that there were other issues that not only needed to be also in the settlement agreement but also amounts for which she feels that she is entitled based on the continuing misrepresentation.

**The Court:** What does she want?

**Plaintiff's counsel:** She has asked for $6,000, your Honor.

* * *

**The Court:** And is there a dispute as to whether or not there was or was not a debt that's being excused?

**Defense counsel:** Your Honor, that issue was–after we had–if I may add some details. After we had reached the final language of the settlement agreement and it was ready to be signed, this issue about the 1099 surfaced. I was able to resolve that such that the defendant voided any 1099 form reporting, so therefore the plaintiff's concern that she is going to have a credit has been eliminated because the defendant has voided those 1099s so she will have no issue of a tax consequence for forgiveness of the debt.

\* \* \*

**Defense counsel:** If I may add the other details with respect to this. We had reached the settlement in February and soon after we reached the settlement, there is this 1099 form issue which I got resolved right away so that was the only concern voiced of, oh here's something else. As your Honor pointed out, it's a small amount. This is an individual suit under the FDCPA. The maximum she can get is a thousand dollars statutory damages for this sort of–whatever the conduct she is alleging. Rather than fight that, the issue was we reached a settlement. I knew nothing about the credit reporting issue until recently when your Honor set a status hearing to say, well, where is this case out in the wilderness, what's going on, at which point I learned from Kent that the plaintiff had claimed that there's some reporting issues. I did an investigation and found out that her debts, the Asset Acceptance, stopped reporting the debts in January of 2009 and also requested that their trade line be deleted which means there is nothing more that Asset Acceptance can do. They submitted the deletion request, they stopped reporting back in 2009. It appear as if the plaintiff just has a change of heart and now she wants more money, and that's not fair.

\* \* \*

**The Court:** What I get back to is my concern is whether or not there has been an agreement that has been reached, and secondly, whether or not she had authorized you to make that agreement. Those are the two factual issues that can be resolved at a hearing or otherwise. As I listen to you two, there is no doubt in my mind that there was an agreement reached between you and you. That is confirmed by these e-mails, hearsay though they might be. I'm assuming that you have communicated these things to her.

**Plaintiff's counsel:** I have, your Honor.

(Transcript of hearing June 1, 2010).

The parties have since filed briefs supporting their respective positions.

**II.     Discussion**

In federal court, settlement agreements are enforced like any other contract, and state law applies. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Oral settlement agreements are enforceable under Illinois law if there is an offer, acceptance and a meeting of the minds as to the terms. *Dillard*, 483 F.3d at 507. "Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Dillard*, 483 F.3d at 507. Where a court is presented sufficient evidence that a binding agreement existed, the court need not subject the parties to the expense of an additional evidentiary hearing. *Hakim v. Payco-General Amer. Credits, Inc.*, 272 F.3d 932, 935 (7th Cir. 2001).

In this case, it is clear to the Court that: (1) the parties had a meeting of the minds, and (2) the plaintiff had given her counsel the authority to agree to the terms. First, it is clear that the parties had a meeting of the minds. The parties reported to the Court in December 2009 that they had reached a settlement agreement. Plaintiff's counsel stated in Court on June 1, 2010 that, before plaintiff changed her mind, the parties had reached a settlement agreement and that the settlement amount was $2000.00. This is confirmed by what the parties put in the written settlement agreement, which by February 3, 2010, both parties had reviewed and agreed to. The plaintiff's counsel, at plaintiff's request, altered the release in the written agreement so that she was releasing only past and not future claims. Defense counsel agreed. Thus, it is clear that by February 3, 2010, the parties had reached an oral agreement, and it is clear that the material terms of that agreement were that defendant would pay plaintiff $2,000, that plaintiff would dismiss her claims with prejudice and that plaintiff would release defendant from any claims she brought or could have brought in this litigation.

Second, the Court concludes that the plaintiff gave her counsel authority to settle the case. Plaintiff's counsel stated in court that plaintiff had agreed to the $2,000 settlement before she "decided that the amount of money for which she was originally to settle for she is no longer willing to settle for." In addition, when the Court asked plaintiff's counsel whether he had discussed with plaintiff the emails plaintiff's counsel exchanged with defense counsel, plaintiff's counsel answered that he had. Accordingly, it is clear to the Court that the plaintiff had given her counsel authority to settle this case for the amounts and under the terms set out in the February 3 agreement.

For these reasons, the Court concludes that the oral settlement agreement the parties reached in this case is enforceable. The fact that the settlement fell apart after February 3, 2010 does not change the fact that an agreement was reached. What seems to have happened is that after the parties reached their agreement, two events happened that upset the plaintiff and made her decide she wanted three times as much money in order to settle the case. The first thing that happened was defendant issued a 1099. Although it is up to the IRS, not the parties to this suit, to determine whether the settlement proceeds are taxable, the defendant attempted to resolve the issue by voiding the 1099. The second thing that happened is that plaintiff noticed that debts she thought she resolved in *prior litigation* were listed on her credit report. Defendant claims that it has already stopped those debts from appearing on plaintiff's credit report. Regardless of who is correct on this fact, it has no bearing on whether the parties reached an agreement in *this* case. The only effect plaintiff's credit report has on this case is that it caused her to change her mind about the settlement agreement she had already reached.

Because the parties reached an oral settlement agreement, the Court grants defendant's motion to enforce the settlement agreement.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion to enforce the settlement agreement and hereby enforces the terms of that agreement. The Court orders defendant to tender to plaintiff within 21 days a check written out to plaintiff in the amount of $2,000.00. This case is hereby dismissed without prejudice. If the defendant fails to pay plaintiff within 21 days, plaintiff may seek leave to reinstate this case to enforce the settlement. This case will be dismissed with prejudice 28 days from today. Each party is to bear his or its own costs and fees.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: August 31, 2010